**HALPERIN v. FITZPATRICK, et al.**

Circuit Court, Dade County.

June 12, 1952.

Jack Kehoe, Miami, for plaintiff.

Ward & Ward, Miami, for defendant, Betty Roney Fitzpatrick.

Anderson & Nadeau, Miami, for defendants Samuel Bratter and Seymour Siegel.

GEORGE E. HOLT, Circuit Judge.

This cause came on to be heard on a motion to dismiss filed by the defendant Betty Roney Fitzpatrick and a similar joint motion filed by the defendants Samuel Bratter and Seymour Siegel, and after argument of counsel and from an examination of the file it is ordered that the said motions be and they are each overruled and denied.

The cause was further heard on motions for a summary judgment filed with supporting affidavits by the defendant Fitzpatrick, jointly by the defendants Bratter and Siegel, and by the plaintiff S. J. Halperin.[1]

After argument of counsel for the respective parties, consideration of the pleadings and the motions and all affidavits filed in connection therewith, the court being advised in the premises, it is ordered that the motions for summary judgment filed by the defendants be and the same are overruled and denied.

---

[1] All affidavits filed in support of the motions for summary judgment are set forth in full below:

#### Affidavit of S. J. Halperin.

Replying to the affidavit of the defendant Seymour Siegel, paragraph 1 thereof, this affiant says that, at all times material to this transaction, Seymour Siegel, although a licensed real estate broker, was on an inactive list with the Florida Real Estate Commission and was acting as a real estate salesman; that, as such salesman, the said Seymour Siegel had no lawful right to consummate any real estate transaction, and that he could only consummate such transactions through the affiant as his employing broker. Affiant further states that the said Seymour Siegel was employed under the following conditions: such real property as owned by the said Siegel and sold by Siegel was to be free from any real estate broker's commission charge; all other sales handled by the said Siegel were to be closed with the affiant as broker, and the brokerage commission was to be paid to affiant, and affiant was, in turn, to pay to the said Siegel, as salesman, 70% of such commission received.

Affiant denies the allegations contained in paragraph 2 of the affidavit of Seymour Siegel and denies having had any discussions with Siegel with reference to the subject matter.

Affiant likewise denies the allegations set forth in paragraph 3 of the affidavit of the said Siegel.

Replying to the affidavit of Samuel Bratter, paragraph 2 thereof, this affiant says that it is not true that he informed the said Bratter that he, the affiant, was not interested in negotiating further to obtain the lease on said property, and says that the facts are that he continued negotiating with Bratter and with Roney, as agent for Fitzpatrick, until he was informed by Roney that the property had been leased.

Affiant further states that during October of 1950, he succeeded in interesting the defendant Bratter in leasing, for a term of 99 years, a 100 ft. tract of land on Lincoln Road, Miami Beach, Florida, between Collins and Washington Avenues; that N. B. T. Roney was acting as the agent for his daughter, Betty Roney Fitzpatrick; that after interesting Bratter in said 'lands and lease, affiant introduced Bratter to Roney; that Roney went to great detail and inquiry to satisfy himself as to the financial responsibility and reliability of Bratter, the customer produced by affiant, it being the usual custom of the said Roney to make a thorough and careful examination into any prospective lessee; that, thereafter as a result of a conference between Roney, and the attorney representing Fitzpatrick, and Bratter, and affiant, a proposed 99 year lease was drafted; that thereafter, Bratter voiced objections to the lease, and subsequently Bratter had a conference with Roney, which conference was not attended by affiant; that there was no understanding reached by Roney and Bratter providing for the forbearance of rent in the event of delayed construction because of governmental regulations; that from November of 1950 through March of 1951, Bratter repeatedly and on numerous occasions asked affiant to further negotiate with Roney and inquired of affiant what were the results of his negotiations; that affiant did upon numerous and repeated occasions attempt to effect a compromise settlement between Roney and Bratter so that the lease in its compromise form could be executed; that he continued these negotiations until some time in May of 1951, when affiant met Roney on the street and was by him advised that he had leased the property.

Affiant further deposes and says that upon numerous occasions between January and May of 1951, the defendant Bratter came to the office of affiant; that Bratter would engage in a closed conference with Siegel, affiant not knowing of the nature of the transactions between Bratter and Siegel. That, upon being advised by Roney, in May of 1951, that Roney had consummated a lease transaction through Siegel, who was then in affiant's employ, affiant discussed the matter with Siegel and then, for the first time, learned that Siegel and Bratter were the real lessees under the lease; and that when affiant was thus informed of Siegel's and Bratter's action in negotiating for the lease, he ordered both Siegel and Bratter out of his office.

It is further ordered that the motion for summary judgment filed by the plaintiff Halperin be and the same is granted. In connection therewith the court makes the following findings from the pleadings as well as from the affidavits filed in support of the several motions for summary judgment, to-wit:

That the plaintiff Halperin is a duly and lawfully licensed real estate broker, under the laws of this state.

That N. B. T. Roney was the duly qualified, authorized and acting agent for his daughter, the defendant Betty Roney Fitzpatrick.

Affiant further states that, thereafter, Siegel and Bratter opened offices at 235 Lincoln Road, Miami Beach, at Room 214, holding out to the public the said office to be the office of Seymour Siegel, Samuel Bratter, and 300 Lincoln Road, Inc.

Affiant further deposes and says that the corporation 300 Lincoln Road, Inc. was a corporation created under the laws of the State of Florida on April 26, 1951; that the first board of directors and incorporators of the corporation were: Marion M. Goldfarb, Mildred Anthony, and Audrey M. Bernstein, all of 420 Lincoln Road, Miami Beach; that said named persons were dummy incorporators, having no real or financial interest in the corporation; and that the charter for the corporation was applied for on April 26, 1951, and that the incorporators named were employees in the law office of Meyer, Weiss & Rosen, attorneys-at-law, 420 Lincoln Road, Miami Beach; that Jack Rosen, member of said law firm, acted as the attorney for Bratter prior to, during, and after the preparation of the original 99 year lease. Affiant further · deposes and says that the original lease executed between Fitzpatrick and 300 Lincoln Road, Inc., a Florida corporation, was executed by Benn Bloom, as president of the corporation, and was attested by Evelyn Dundas, as secretary; that neither Benn Bloom nor Evelyn Dundas had any real or financial interest in the corporation; that Evelyn Dundas was the secretary in the law office of E. L. Lockhart, 605 Lincoln Road, Miami Beach; that the real parties in interest in said corporation were the defendants Bratter and Siegel.

This affiant further deposes and says that, according to the affidavits of N. B. T. Roney, H. F. Ward and E. L. Lockhart, the form and terms of the lease with 300 Lincoln Road, Inc. were submitted and agreed upon on April 26, 1951, and that on this same date, April 26, 1951, the charter of 300 Lincoln Road, Inc. was granted under the laws of the State of Florida.

Affidavit of Seymour Siegel.

The affiant is, and has been for some time, a registered real estate broker under the laws of Florida and was at all times material hereto a salesman in the office of the plaintiff; that the arrangement between the affiant and the plaintiff was as follows: that affiant was to pay to the plaintiff a commission on transactions which affiant handled of a sum equal to 30% of the commission which affiant received, provided that in transactions in which the affiant participated both as a broker and as a salesman, the plaintiff was not to receive anything in the way of commissions from that part of the transaction in which the affiant had a proprietary interest.

Affiant knew that the plaintiff and the defendant Bratter had been engaged in the latter part of 1950 in negotiations with N. B. T. Roney, as the agent of Betty Roney Fitzpatrick, for the acquisition of a lease on the property described in the complaint, notwithstanding which, the plaintiff had told affiant that he had ceased to have any interest in such negotiations; that they had fallen through; and that he was no longer trying to procure a lease on the property for the defendant Bratter.

At the time that the defendant Bratter was negotiating with Roney for the lease of the property through the plaintiff, or shortly thereafter, when the negotiations fell through, the plaintiff told the affiant that he was not anxious for Bratter to acquire a lease on the property because, as the plaintiff told affiant, the plaintiff owned an interest in property in close proximity to that of the defendant Fitzpatrick and he was interested in having Fitzpatrick's property developed in such a way that added value would be brought to the plaintiff's property, and the plaintiff said that he did not think that the defendant Bratter would develop the property in such a way as to increase the value of the plaintiff's nearby property.

In April, 1951, affiant commenced negotiations with Roney for a lease on the above referred to property to be taken in the name of a corporation known as 300 Lincoln Road, Inc., which was a corporation that had been organized at the instance of one Benn Bloom; Roney agreed to the lease to the said corporation, and the transaction was finally closed by the execution of the lease from Betty Roney Fitzpatrick to 300 Lincoln Road, Inc. Thereupon, 300 Lincoln Road, Inc. executed a sub-lease on a portion of the property to Benn Bloom, and in none of the transactions did the plaintiff participate.

That the plaintiff was given a listing to obtain a lessee under a 99 year lease for certain property owned by the defendant Fitzpatrick; that pursuant thereto the plaintiff interested the defendant Bratter in the property; that the plaintiff introduced Bratter to the agent of the defendant Fitzpatrick (her father); that as a result of negotiations instigated by the plaintiff, the terms and conditions of a 99 year lease were agreed upon and reduced to writing; that the aforesaid lease was reduced to writing in November of 1950; that the defendant Bratter declined to execute the lease in its then present form,

Affiant had known the defendant Bratter before affiant became a salesman in plaintiff's office, and at no time was the defendant Bratter actually a customer of the plaintiff in the sense that Bratter came to the plaintiff's office because of his acquaintance with the plaintiff, but on the contrary, the defendant Bratter was actually a customer of the affiant and, acting upon this knowledge, affiant interested the defendant Bratter in acquiring a half interest in the leasehold estate by the acquisition of Bloom's stock in 300 Lincoln Road, Inc.

Bloom agreed to sell his stock in the aforesaid company to affiant and Bratter, upon their giving him a sub-lease of a portion of the building which the corporation proposed to erect upon the demised premises, and for these several considerations, the affiant Bratter acquired Bloom's stock in the corporation, and thereupon, succeeded to his rights in the same, and Bloom concluded the transaction by having the corporation lease the property from the defendant Fitzpatrick and subsequently assigned his interest in said corporation to affiant and Bratter.

### Affidavit of Samuel Bratter.

In September, 1950, the plaintiff approached the affiant with the suggestion that the affiant lease from Betty Roney Fitzpatrick the property described in the complaint, and thereupon, the plaintiff and the affiant met with N. B. T. Roney, the agent of Betty Roney Fitzpatrick, in an effort to make a lease on the premises but, owing to various and sundry factors, including governmental restrictions upon the right to build on the property, the negotiations did not materialize, and the affiant did not lease the property.

Several weeks later the affiant approached the plaintiff with the suggestion that the negotiations between them and the said N. B. T. Roney be renewed and that the plaintiff attempt to get the property on a lease for the affiant, at which time the plaintiff stated that he was not interested in carrying on further negotiations and told the affiant that, if he were still interested in the property, the affiant could pursue the matter on his own account and that the plaintiff would not co-operate with him in such case.

At this time the affiant made several attempts to communicate with the said agent of Betty Roney Fitzpatrick and was unable to get in touch with him, whereupon, for the time being, he discontinued his efforts to lease the property.

Sometime about the 1st of May, 1951, the defendant, Seymour Siegel, approached the affiant and told the affiant that he, Siegel, had been carrying on negotiations with N. B. T. Roney for a lease of the property for one Benn Bloom. Siegel was then and there a duly authorized and registered real estate broker, but was then and there acting as a real estate salesman in the office of the plaintiff, and was attempting to procure the property for Bloom, who proposed to acquire it in the name of 300 Lincoln Road, Inc., a Florida corporation, which was then owned and controlled by Bloom.

At that time Siegel told affiant that Bloom was interested in procuring a site for a store to be erected on the premises and was not interested in leasing the entire property described in the complaint, and it was suggested to affiant that he and Siegel undertake to procure a lease on the property from the defendant Fitzpatrick and then execute a sub-lease of a portion of the property to Bloom.

Notwithstanding the previous statements in this affidavit concerning Bloom's lack of interest in the property, he and Roney had entered into an arrangement by which Roney, acting for the defendant Fitzpatrick, agreed to lease the property to Bloom's corporation, 300 Lincoln Road, Inc., and a time had been set for the closing of the transaction and the execution and delivery of the papers in the office of Ward & Ward, who then and there represented the defendant Fitzpatrick. At said time a lease was actually executed and delivered by the defendant Fitzpatrick to 300 Lincoln Road, Inc., which was then and there owned by Bloom, and thereupon the affiant and Seymour Siegel acquired from Bloom his interest in 300 Lincoln Road, Inc., and subsequently executed and delivered to him a sub-lease on a portion of the premises included in the lease between Fitzpatrick and the said corporation, a part of the consideration for the sub-lease being that Bloom assign his stock in said corporation to affiant and Siegel.

requesting that some concessions, or allowances, or provisions be made whereby the amount of rents to be paid by the lessee under the lease would be reduced in the event the lessee was delayed in erecting a building on the property.

That the plaintiff Halperin continued negotiations between Bratter and the agent of Fitzpatrick, attempting to reach an agreement on the provisions for a reduction of rents in the event construction of a building on the premises was delayed because of governmental building restrictions; that these negotiations were continued by the plaintiff up until the time he was

At no time during the negotiations did the affiant have any dealings with the plaintiff, and the plaintiff did not in any respect represent the affiant in any way in the affiant's acquisition of interest in the stock of 300 Lincoln Road, Inc.

The lease which the defendant Fitzpatrick executed to 300 Lincoln Road, Inc., was substantially and materially different from the lease which affiant proposed to take on the property in the original negotiations between himself and Roney and the plaintiff.

### Affidavit of N. B. T. Roney.

That during the month of October, 1950 the plaintiff in the above entitled cause, together with Samuel Bratter of Miami Beach, conferred with this affiant who was then and there acting as agent for his daughter, Betty Roney Fitzpatrick, in connection with the proposed 99 year lease on a certain parcel of land owned by the said Betty Roney Fitzpatrick consisting of a 100 foot frontage on Lincoln Road, Miami Beach, between Collins and Washington Avenues; that after the preliminary conference he arranged for a further conference in the office of Ward & Ward, DuPont Building, Miami, at which time a tentative agreement for entering into said lease was arrived at, and H. F. Ward of said firm was instructed to prepare a form of 99 year lease embodying the proposed agreements between the parties and to thereupon submit a copy thereof to this affiant and to Jack Rosen of the law firm of Meyer, Weiss & Rosen of Miami Beach, as attorney for Samuel Bratter, for examination and approval; that on or about November 1, 1950, this affiant received a copy of the proposed lease, and shortly thereafter attended a further conference in the office of Ward & Ward, DuPont Building, Miami, concerning the terms of the lease; that at this conference there was present Samuel Bratter, Jack Rosen, H. F. Ward and this affiant; that Samuel Bratter requested certain changes and amendments to the proposed lease which were not satisfactory to this affiant, and therefore negotiations were terminated between the parties.

Affiant further states that during the month of April, 1951, one Seymour Siegel, who represented himself to be a real estate broker, approached this affiant with a proposition for leasing the same parcel of land hereinabove referred to to his client, Benn Bloom; that once again this affiant arranged for a conference in the office of Ward & Ward for the purpose of discussing the terms and conditions of the proposed lease. Such a conference was arranged and there were present Seymour Siegel, E. L. Lockhart as attorney for Benn Bloom, H. F. Ward and this affiant; that H. F. Ward then presented to E. L. Lockhart a copy of the previous lease which had been prepared for the Bratter deal in November of 1950, and asked him if he could accept the terms and conditions of said lease, subject to certain minor amendments and adjustments. Mr. Lockhart then agreed that the lease could be amended in certain respects and presented to him for approval.

On or about April 26, 1951, a copy of the revised lease was sent to this affiant who approved same on behalf of Betty Roney Fitzpatrick, and at the same time this affiant was advised that the proposed lease was approved by E. L. Lockhart as attorney for Benn Bloom, and that the lease transaction would be closed on or about May 11, 1951. Prior to the closing date this affiant was called to Philadelphia on business and therefore was not present upon the date of closing, but was advised by the firm of Ward & Ward that the transaction was closed on May 14, 1951, and that the name of the lessee which was placed in the lease was 300 Lincoln Road, Inc., a Florida corporation.

This affiant further states that at no time during the negotiations for the closing of this deal, which negotiations were commenced in April of 1951, was the name of the plaintiff herein or of Samuel Bratter referred to or mentioned in connection with the deal; that the broker, Seymour Siegel, represented Mr. Benn Bloom and/or his corporation as the prospective lessee and that these same representations were made to this affiant by E. L. Lockhart, attorney. None of the parties connected with the last mentioned lease deal were involved in the first deal discussed with Mr. Bratter and Mr. Halperin in October and November of 1950, and that upon the closing of the last mentioned lease transaction, that is, to wit, the one wherein 300 Lincoln Road, Inc. is the lessee, which said deal was closed in the name of the corporation by Benn Bloom,

informed by the agent of Fitzpatrick that a lease had been entered into by Fitzpatrick.

That the plaintiff and the agent of Fitzpatrick agreed that the plaintiff should receive the sum of $15,000 as a real estate commission for negotiating the lease.

That the defendant Siegel, although a registered real estate broker under the laws of this state, was at all times pertinent to the facts involved in this litigation listed as a non-active broker, and was employed by the plaintiff as a salesman; that under the laws of this state Siegel, as a non-active broker, was not lawfully authorized to consummate a real estate transaction, that he, as a non-active broker and operating as a salesman, was required to consummate all real estate transactions through his employing broker, who in this case was the plaintiff.

That on May 8, 1951 the defendant (Mrs.) Fitzpatrick, joined by her husband, entered into a 99 year lease with a

president, this affiant entered into an agreement with Seymour Siegel for the payment of a broker's commission for making said lease.

Affidavit of H. F. Ward.

Affiant says that he is an attorney at law practicing in Dade County, and is a member of the law firm of Ward & Ward, DuPont Building, Miami; that during the month of October 1950 the plaintiff, together with N. B. T. Roney and Samuel Bratter, of Miami Beach, called at the office of this affiant for the purpose of discussing a proposed 99 year lease on a 100 foot frontage on Lincoln Road, Miami Beach, situate between Collins and Washington Avenues; that this affiant was employed to represent Betty Roney Fitzpatrick, the owner of said property who was then and there being represented by N. B. T. Roney as her agent; that after several conferences a tentative agreement was reached as to terms and conditions to be included in the proposed 99 year lease, and under date of October 30, 1950, this affiant mailed a copy of the proposed lease to N. B. T. Roney and to Mr. Jack Rosen of the law firm of Meyer, Weiss & Rosen, who was then representing Samuel Bratter; that under date of November 1, 1950, this affiant sent the abstract covering the premises described in the proposed lease to the National Title Insurance Co. for continuation, and after the abstract was continued to date it was delivered to Jack Rosen for examination. A few days thereafter Jack Rosen, together with Samuel Bratter, called at the office of this affiant to discuss the conditions of the lease as prepared and to make further request for amendments thereto, one specific amendment having reference to a forbearance of rent during any period of time in which the proposed lessee should be restricted by governmental regulations from constructing a building upon the demised premises. Mr. Roney was present at said conference, and after a lengthy discussion of the matters hereinabove referred to Mr. Roney refused to allow any forbearance of rent, and Mr. Rosen, together with Mr. Bratter, then announced that they would not be in position to take the lease without said forbearance, and both parties thereupon agreed to terminate negotiations. Whereupon, Mr. Rosen returned the abstract to this affiant and all files in connection with the matter were closed.

Affiant further states that on or about April 26, 1951 Mr. Seymour Siegel called at the office of this affiant with reference to negotiating a new lease upon the property hereinabove referred to. Mr. N. B. T. Roney and Mr. E. L. Lockhart, an attorney at law of Miami Beach, as attorney for Benn Bloom, attended said conference. This affiant produced a copy of the original proposed lease with Bratter, and after an examination thereof by Mr. Lockhart it was agreed that the lease could be used after several amendments were made. This affiant thereupon made the amendments to the lease and mailed new copies thereof to Mr. Lockhart on April 26, 1951. The closing of the said lease transaction was then set for May 11, 1951, but the closing date was extended at the request of the proposed lessee to May 14, 1951, at which time the lease transaction was closed with E. L. Lockhart as attorney for Benn Bloom, but at the request of Lockhart and Bloom the lessee was designated as 300 Lincoln Road, Inc., a Florida corporation.

Florida corporation named 300 Lincoln Road, Inc.; that the terms, conditions and provisions of the lease were substantially the same as the terms, conditions and provisions of the lease originally prepared to be executed by the defendant Fitzpatrick, as lessor, and Bratter, as lessee, with the exception that the first year's rental was reduced from $45,000 to $25,000; that the defendant Fitzpatrick, by and through her duly constituted agent, entered into an agreement to pay Siegel a broker's commission for negotiating the lease with 300 Lincoln Road, Inc.; that the amount of commission to be so paid was $2,500 less than that agreed upon between the said agent and the plaintiff in this cause, and in addition, that the commission was to be paid to Siegel over a period of ten years—instead of being payable at one time, as was agreed upon between the agent of Fitzpatrick and the plaintiff.

That on April 26, 1951 the lease originally prepared for execution by the defendant Fitzpatrick and the defendant Brat-

At no time during the conference with reference to this new lease with Mr. Bloom was any reference made to Samuel Bratter or to the plaintiff in the above entitled cause, and as a matter of fact, all papers in connection with the closing of the lease transaction were signed in the name of 300 Lincoln Road, Inc., a Florida corporation, by Benn Bloom, president.

#### Affidavit of E. L. Lockhart.

E. L. Lockhart, being first duly sworn says that he is an attorney at law, with offices at 605 Lincoln Road, Miami Beach, and that in April, 1951, Seymour Siegel arranged an appointment with me and told me of the lease negotiations between Mr. Benn Bloom, who was dealing through his corporation 300 Lincoln Road, Inc., and Mr. N. B. T. Roney, agent for Betty Roney Fitzpatrick, for a lease of the property at 300 Lincoln Road, Miami Beach, and engaged me on behalf of Mr. Bloom to consummate the negotiations and procure the execution of the lease.

After several negotiations with Mr. Roney and meetings with him and with his attorney Harold Ward, of the law firm of Ward & Ward, and with Mr. Benn Bloom, the terms of the lease were agreed upon; the lease prepared, and its provisions agreed upon, and the lease transaction was closed at the escrow department at the Miami Beach First National Bank, final closing being on or about May 22, 1951.

I knew of no broker having any connection with the above transaction other than Seymour Siegel, and I did not represent 300 Lincoln Road, Inc., or any of its stockholders in the sale of any of its stock to Samuel Bratter and Seymour Siegel; also, I did not represent Samuel Bratter or Seymour Siegel in any such stock transaction.

#### Affidavit of Benn Bloom.

Benn Bloom, after first being duly sworn, deposes and says that in March, 1951, Seymour Siegel, who was interested in having a Lincoln Road store room, came to me with a proposal to lease 100 feet of Lincoln Road property from N. B. T. Roney, who I later found was representing his daughter, Betty Roney Fitzpatrick. This property was at 300 Lincoln Road and I negotiated through 300 Lincoln Road, Inc. The lease negotiations were carried on with Mr. Siegel representing 300 Lincoln Road, Inc. as broker and E. L. Lockhart representing 300 Lincoln Road, Inc. as attorney, and with Harold F. Ward who was the attorney representing Mrs. Fitzpatrick. The terms of the lease were finally agreed upon and at about that time Mr. Siegel proposed to me that I could have my store room on Lincoln Road and that he and a Mr. Samuel Bratter would take over the lease, and this agreement was arranged soon after my closing on the lease, and I assigned to them all of my interest in 300 Lincoln Road, Inc., and obtained my lease from 300 Lincoln Road, Inc. to the Lincoln Road store room which I still hold, the lease being no. 316 Lincoln Road, Miami Beach, the lease being to my corporation, Beminosa Corporation, a Florida corporation.

Seymour Siegel was the real estate broker who negotiated the lease between Betty Roney Fitzpatrick and 300 Lincoln Road, Inc., and there was no other broker involved in the transaction to my knowledge.

ter was exhibited to one Benn Bloom and was by him and through his then acting attorney accepted.

That on the same day, April 26, 1951, a corporation charter was issued by the secretary of state for this state to 300 Lincoln Road, Inc.; that the incorporators were dummy or nominal incorporators, having no real or beneficial interest in the corporation; that the incorporators were employees in the law office of the attorney then representing the defendant Bratter.

That the defendants assert by affidavits filed in support of their motions for summary judgment that Bloom was the actual owner of the corporation, 300 Lincoln Road, Inc., and was the actual lessee in the lease executed on May 8, 1951; that it appears, however, from these affidavits that Bloom was only the nominal lessee or nominal owner of the corporation, for immediately upon the execution of the lease the corporate assets were transferred to Bratter, and Bratter as owner of the corporation then executed a sub-lease for a small portion of the premises to Bloom.

That the defendant Bratter is the real owner of the corporation 300 Lincoln Road, Inc., and that he is in fact the real lessee in said lease; that the forming of the corporation was a subterfuge used by the defendants in an attempt to conceal the identity of the real and actual lessee and to deprive the plaintiff of the real estate commission earned by the plaintiff in negotiating and bringing about the execution of the aforesaid lease.

That no real estate commission could have lawfully been paid to the defendant Siegel.

That none of the defendants has any real, actual, bona fide defense against the claim asserted by the plaintiff in his complaint.

It follows that judgment should be entered in favor of the plaintiff and against the defendants, Betty Roney Fitzpatrick, Samuel Bratter and Seymour Siegel.

It is, therefore, ordered and adjudged that judgment be and the same is hereby entered in favor of the plaintiff, S. J. Halperin, and against the defendants, Betty Roney Fitzpatrick, Samuel Bratter and Seymour Siegel in the amount of $15,000, together with interest thereon from the date hereof, together with all costs in this cause expended by the plaintiff, for which let execution issue.